## HAVEN v. MUNSON.

### No. 1621.

Court of Appeal of Louisiana. First Circuit.

Oct. 7, 1936.

C. G. Spaht and Fred G. Benton, both of Baton Rouge, for appellant.

Laycock & Moyse, of Baton Rouge, for appellee.

DORE, Judge.

This suit is to recover compensation at the rate of $3.90 per week for 200 weeks, and for medical and drug bills not exceeding $250, on account of an injury received by plaintiff on September 14, 1933, while working for defendant in a cotton gin owned by him.

Plaintiff's right arm was caught in the gin and mangled to such an extent as to necessitate its amputation near the shoulder. Defendant admits that plaintiff received the injury which necessitated the amputation of his arm, and admits that plaintiff was employed by him, but defendant denies that he is due plaintiff any compensation for the reasons: (1) That, on September 1, 1933, on entering his employ, plaintiff elected in writing not to come under the Workmen's Compensation Law, Act No. 20 of 1914, as amended; (2) that defendant furnished plaintiff with a modern gin, equipped with all necessary guards and safety devices, and the injury to plaintiff was caused by his deliberate failure to use the safety guards and devices furnished by defendant for the protection of plaintiff, that plaintiff failed and refused to obey instructions, and the accident occurred while he was disobeying instructions and acting without his line of duty.

Judgment was rendered for defendant, rejecting plaintiff's claim, hence this appeal.

In support of his defense, the defendant introduced in evidence a contract dated September 1, 1933, signed by himself and the plaintiff, wherein plaintiff agreed to exclude the provisions of the Workmen's Compensation Law in so far as it affected his employment by the defendant as ginner, and also agreed to exclude from said employment the provisions of book 3, title 5, chapter 2 (article 2315 et seq.), relative to offenses and quasi offenses, particularly article 2315 of the Civil Code of Louisiana. The plaintiff in said contract further undertook to assume all risks of his employment and injury through the negligence of a fellow servant or through his own contributory negligence. As a substitute for the liability of the defendant as an employer under the Workmen's Compensation Law, Act No. 20 of 1914, as amended, and his liability under the general tort law of the state, plaintiff agreed to accept the benefits under a certain policy in the Mutual Benefit, Health & Accident Association of Omaha, which policy was referred to in the agreement and made part thereof. The plaintiff denied signing this contract in his testimony; however, we believe that the record shows that he did sign the contract, although it is probable that he did not understand its full import.

Section 3 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, provides that every contract of hiring, verbal, written, or implied, between any employer and employee in the hazardous trades and occupations named in the act, shall be presumed to have been made subject to the act, unless there be as a part of said contract an express statement in writing either in the contract itself or by written notice by either party to the other, that the provisions of the act, other than sections 4 and 5 (as amended by Act No. 38 of 1918), are not intended to apply. Did the contract which plaintiff signed have the effect of taking his employment out of the provisions of the act? We think not.

Under the act the employer and the employee have the right to waive the provisions of the act by an agreement to that effect; but, in case such a waiver is made, the liability of the employer then comes under the general tort law of the state. Section 36 of the Compensation Act provides that no contract, rule, or regulation or device whatever shall operate to relieve the employer, in whole or in part, from any liability created by the act, except as therein provided. The latter clause evidently refers to the manner and effect of election on the part of employer and employee as provided in section 3.

There could be no question of the right of plaintiff to elect not to come under the provisions of the act if he had so desired when he signed the contract. But this document is more than an election on the part of plaintiff, as an employee, not to come under the law.

He also agrees in the same document and at the same time to relieve his employer of all liability from any cause whatever for any injury which plaintiff might sustain in the course of that employment.

The evidence shows that the employer deducted 10 cents per day from the wages of plaintiff, which amount, plaintiff claims, was to pay the premiums on the policy which was to serve as a substitute for both the compensation liability of the employer and his general tort liability as well. Defendant admits that the deduction was made, but claims that he paid the premiums; however, he does not show how or when the amount so deducted was ever paid to plaintiff. Plaintiff testifies that the deductions were made and never paid to him. If the defendant paid the premiums on this policy out of his own funds, we can see no reasons for making this deduction of 10 cents per day from the wages of the employees. The evidence leads to the conclusion that plaintiff was paying out of his own meager wages for this accident policy which was to act as a substitute for the liability imposed on the employer by the Compensation Law as well as his liability under the general tort law of the state.

In our opinion, this attempted contract is not only in direct contravention of section 36 of the Compensation Law, but is contrary to public policy. If contracts of this kind are given judicial sanction, it would open the door for an easy method of circumventing the wholesome provisions of the Compensation Law, and relegate the employee to an accident policy as his only means of compensation in case of an injury; and, more reprehensible still, require the employee to pay for his own insurance out of his wages. Therefore, whatever rights plaintiff has as an employée of defendant must be governed by the provisions of the Compensation Law, Act No. 20 of 1914, as amended.

Another defense is that the plaintiff deliberately failed to use an adequate guard or protection for his safety furnished by

the employer. The plaintiff was injured when he raised the front or breast of the gin, removed the hopper or barrier from underneath, and was attempting to unclog the cotton with his hands by pulling the cotton out of the ribs through which the saws revolved when the breast was down. It is not clear whether the breast fell down and threw plaintiff's arm up against the saws as they came up through the ribs or whether plaintiff's arm was caught in the saws, and the lever holding up the breast was shaken loose by the force of plaintiff's arm and body being suddenly pulled up against the breast of the gin from underneath.

It is contended that the barrier or hopper was placed underneath the gin stand to catch the seed as they came from the saws after being separated from the lint, and also to protect and cover the machinery.

It appears that the usual and proper way to unclog the cotton when choked in the ribs is to raise the breast of the gin with a lever placed there for that purpose, and, with a stick, pull the cotton out of the ribs which are then separated from the saws. Plaintiff had been instructed to unchoke the gin in this manner. It further appears, however, that if the cotton becomes clogged in the lower or back ribs, this point could not be reached by raising the breast of the gin, and it is then necessary to stop the gin, remove the hopper, and get down under the gin to get to the choked cotton in these back ribs.

Plaintiff testifies that he had unchoked the back ribs before by removing the hopper and pulling out the clogged cotton in the back ribs without stopping the gin. There can be no doubt but that plaintiff used a rather dangerous and unusual method of unclogging the gin. The hopper or barrier which plaintiff removed in order to get underneath the gin and reach the back ribs with his stick was placed in the gin for the double purpose of catching the seed from the saws and also as a guard or protection against the machinery when in motion. The evidence does not show that plaintiff knew or had been told that this hopper was placed there as a guard and protection against contact with the moving machinery.

It is true that he was told not to use his hands in unclogging the cotton, but to use a stick which was furnished him for that purpose. Plaintiff testifies, and his testimony is not contradicted on that point,

that he was using this stick in an effort to unclog the cotton from the back ribs.

He says that this was the only way that he knew how to get the cotton unclogged in the back ribs. We conclude from the evidence that plaintiff did not know that the hopper or barrier which he removed was placed there for his safety and protection. He was a beginner. It formed part of the gin and was necessary in the efficient operation of the gin. To an employee, unfamiliar with intricate machinery as was plaintiff, the hopper would appear to him as no more a guard or protection than any other part of the gin, such as the breast, the lever, or any other component part of the gin in its entirety. In fact, such was, apparently, the nature and purpose of this part of the gin.

■ In order for an employee to be deprived of compensation for deliberate failure to use adequate guards or protection for his safety, it must appear that the employee was fully aware of the purpose of the protection and realize the danger consequent upon a failure to use it. Otherwise his failure could not be classed as deliberate. See McClendon v. Louisiana Central Lumber Co., 17 La.App. 246, 135 So. 754; Cole v. List & Weatherly Const. Co. (La.App.) 156 So. 88.

■ The mere fact that the employee performed his work in a careless or improper manner, or that he did not perform the work in the way he had been instructed, is no bar to his recovery of compensation. Jones v. Landry, 10 La.App. 740, 122 So. 913, and cases therein cited.

■ Learned counsel for defendant cites and relies on the two cases of Daigle v. Moody et al., 175 La. 853, 144 So. 596, and Carter v. Christ (La.App.) 148 So. 714. In the former case, the employee attempted to swim across Red river instead of using a boat provided by the employer for transporting the employees across the river in connection with their line of work. It was shown in that case that the boat was provided by the employer solely for the safety of the employees in getting them from one side of the river to the other side. The drowned employee knew that the boat was furnished for his protection in crossing the river, and also knew the danger involved in attempting to swim the river. In that case the court properly held that the action of the employee in failing to use the boat was a deliberate act of the employee which precluded his recovery.

The same situation existed in the other case of Carter v. Christ. The deceased employee was working on the side of an office building on a suspended scaffold. As a safety for the employee, the employer had provided ropes, called safety lines, attached to the top of the building and to be tied around the body of the workman on the scaffold, so, in case the scaffold should give way or the workman fall off, the ropes would prevent the workman from falling. The deceased knew the purpose of these ropes and the danger involved in failing to use them. He deliberately refused to use these ropes on the occasion of the accident and fell to the ground and was killed.

The difference in these two cases and the present case is manifest. In the former cases the boat and the ropes were furnished solely for protection to the employees, and the employees were not only aware of this fact, but they fully realized the danger involved in a failure to use them. Such is not the situation in the present case. The hopper or barrier which plaintiff removed was not there solely as a protection to employees, but served to form part of the gin as well. Moreover, plaintiff did not know that the purpose of the hopper or barrier was to protect him from the machinery, nor did he realize the danger involved in removing this barrier and getting down under the gin stand.

The contention that the accident occurred while plaintiff was disobeying instructions, and therefore without the scope of his employment, is without merit. One of the duties of plaintiff was to unclog the cotton, and he was attempting to perform this duty when injured. The fact that he was performing this duty in a different and more dangerous way than instructed, as we have before shown, would not take his claim out of the compensation law.

Plaintiff was paid $42 by the employer, which amount should be deducted from the allowance. As plaintiff paid the premiums on the insurance policy, the benefits belonged to him, and not to his employer. This insurance did not affect his claim for compensation. Plaintiff has not proved any claim for medical or nursing bills.

For these reasons the judgment of the lower court is hereby avoided, annulled, and set aside; and it is now ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff and against the said defendant herein, awarding the said plaintiff compensation at the rate of $3.90 per week for a period of 200 weeks beginning September 14, 1933, with 5 per cent. per annum interest thereon from due date until paid, subject to a credit of $42, with 5 per cent. per annum interest thereon from date or dates of payments; the defendant to pay all costs in both courts.

Reversed and rendered.