478 So.2d 980 (1985)
Everett L. GOOCH
v.
STANDRIDGE BROTHERS, U.S.F. & G. Company.
No. 85-CA-338.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 1985.
Rehearing Denied December 17, 1985.
Writ Denied February 7, 1986.
Pierre F. Gaudin, Jr., Gretna, for plaintiff-appellee.
Henry E. Yoes, III, New Orleans, for defendant-appellant.
Before BOUTALL, CURRAULT and DUFRESNE, JJ.
DUFRESNE, Judge.
United States Fidelity and Guaranty Insurance Company (USF & G) appeals from a judgment finding plaintiff Everett Gooch permanently partially disabled under the Workmen's Compensation laws. We affirm the decision of the trial court.
On appeal USF & G has assigned the following errors for our review:
1) The trial court erred in failing to make appropriate factual findings, supported by the evidence and/or in making contradictory factual determinations.
2) The trial court erred in not finding that plaintiff fell after deliberately choosing, after warning, to slide down a tool rope to exit a storage tank rather than using the specially designed stairway.
*981 3) The trial court erred in ruling that defendant's LSA-R.S. 23:1081 defense was inapplicable where the worker deliberately chose, after warning, to descend from the top of a forty foot tank to ground level by sliding down a tool rope rather than by using the walkway.
4) The trial court erred in ruling that the LSA-R.S. 23:1081 defense was inapplicable if it accepted the plaintiff's version of the accident.
The plaintiff, Everett Gooch was employed by Standridge Brothers as a welder/fitter to perform certain maintenance work on several steel tanks at the Witco Chemical Company yard, located in Gretna, Louisiana. Gooch claims that on April 26, 1984, he injured his wrist, ankle, head, and arm while descending a tool rope which was attached to the top beams of a steel tank. On the date of the accident, Gooch was standing on scaffolding which had been erected inside an oil storage tank which was approximately forty feet above the floor and rimmed the entire inside of the structure. Located inside the storage tank was a rope which was tied to the top beams or supports of the tank. This rope was within easy reach of the workers and was used for raising and lowering material and tools.
During the course and scope of his work inside this storage tank, Gooch testified that he slipped and grabbed the tool rope which was attached to the scaffolding. This rope broke causing Gooch to fall approximately forty feet to the floor of the tank. At the time of this accident, Gooch was working with a co-employee, Bobby Fox, who was standing on the scaffolding alongside Gooch. Fox was the only eye witness to this incident.
In order to gain access to the top of the tank, it was necessary to take a spiral stairway located outside of the tank up to the grated walkway, also located outside of the tank. This walkway extended across several tanks which were in line with the tank in which Gooch fell. Robert Whitmer, the Witco safety supervisor, offered and accepted by the trial court as an expert in industrial safety, testified regarding the safety equipment designed for gaining access to the top of the tank in question. Mr. Whitmer testified that the spiral staircase was designed as a safety feature. When the roof was off the tank, the workers would step from the outside walkway over onto the scaffolding, because there was no structure inside the tank which would allow one to go from the top inside of the tank to the bottom inside of the tank.
At trial, Gooch testified that only he and his helper, Bobby Fox, were in the tank at the time of his fall. Gooch testified that his fall occurred as follows:
"... we built the heating coils on the outside of the tank, and then the cherry picker picks it up and sets it over the top into the bottom on the inside of the tank, okay. I was in the process of going back and hooking it closer together-closer-hook the block of the crane closer to the heating coil so when he picked it up, he can clear the top of the tank to set it down on the inside.... I had asked the helper (Fox) to go down and re-hook it, and he stood there and looked at me, so I decided to go down on the outside and do it myself. So in the process of getting from one point to where the walkway runs across the top of the tanks, I slipped and fell and I grabbed a piece of rope and the rope broke and I fell."
According to Gooch, the rope he grabbed was hanging from the beams or purls in the tank. He testified that he had tied the rope to the beams inside the tank earlier and that the rope was approximately 5/8 of an inch to ¾ of an inch in diameter and was mainly used to pull up equipment, that is a tool rope.
Bobby Fox, gave a different version as to how Gooch's fall occurred. According to Fox:
"Mr. Gooch was going to go down on a rope inside the tank. He come off the purl-he come off the scaffold onto the purl, he was hanging on the rope and the rope broke."
*982 When asked whether or not Fox had any conversation with Gooch, he stated that:
"I (Fox) told him (Gooch) he shouldn't go down the rope. He asked me for mygloves and I said-I wasn't going to give him my gloves because he shouldn't go down the rope, you'd get hurt-and he goes `well'. He's going to go down anyway, so I said okay, here's my gloves, so I gave him my gloves anyway."
According to Fox, after Gooch fell, he immediately told the crane operator to call an ambulance and he ran down the stairway to help Gooch.
There is no dispute among the parties that the incident sued upon occurred during the course and scope of Gooch's employment with the defendant, Standridge Brothers. Furthermore, it is also undisputed that Gooch, according to his treating physician, Dr. Gregory Gidman, is permanently and partially disabled pursuant to the provisions of the Louisiana Workmen's Compensation Act. Gooch's compensation and medical benefits were terminated in October 1984, by the office of Worker's Compensation. The crucial issue which is presented to this court for review is whether the employer, Standridge Brothers, and its compensation carrier, USF&G, are entitled to deny Gooch's claim for compensation and medical benefits under the provisions of LSA-R.S. 23:1081(1)(c), which reads in pertinent part:
"Defenses.
1. No compensation shall be allowed for any injury caused:....
(c) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him....
2. In determining whether or not an employer shall be exempt from and relieved of paying compensation because of an injury sustained by an employee for any cause or reason set forth in this Subsection, the burden of proof shall be upon the employer."
The trial court, after hearing the evidence, ruled that Gooch should be entitled to recover compensation and medical benefits under the Louisiana Workmen's Compensation Act. Review of the record discloses conflicting testimony as to why and how Gooch fell to the bottom of the oil storage tank. Defendants argue that Gooch was sliding down the rope as an alternative to using the stairway, thereby he deliberately failed to use an adequate safety device or guard which was provided for him.
We agree with the Second Circuit Court of Appeal in the meaning of LSA-R.S. 23:1081, in Holcomb v. Fowler, 305 So.2d 616 at pg. 618 (La.App. 2nd Cir.1974):
"Ordinarily, where the injury is due from negligence or thoughtlessness, it is compensable. The failure or refusal to use the safety device must be intentional and willfulimplying obstinancy, stubbornness, and design, a premeditated and intentional wrongdoing."
We are convinced, that Gooch was not engaged in any willful or intentional act which would preclude him from compensation or medical benefits. In Attaway v. Farley's Glass Co., Inc., 430 So.2d 705 at pg. 710 (La.App. 2nd Cir.1983) the court stated that:
"The employer must show (1) premeditation or malice on the part of the injured employee, and (2) a reasonable expectation that injury would result from the employee's actions. An employee is not disqualified from benefits by his instinctive or impulsive acts even if he is to blame for his injury." Citations omitted.
Lastly we are given guidance by a recent opinion in Lee v. Gaffney Construction Company, 474 So.2d 994 (La.App. 5th Cir. 1985). The court stated that relative to a workman's compensation claim, the statute clearly demands that the employer must prove that the employee had a willful and wanton intention to injure himself.
It is the appreciation of this court that the plaintiff Everett Gooch did not willfully intend to injure himself in his act of sliding down the rope to descend from the scaffolding inside this tank. Although we do admit the safer procedure would be *983 to use the stairway constructed on the outside of the tank. The fact that Gooch attempted to descend some forty feet by way of a rope should not preclude him from collecting Workmen's Compensation. Further examination of the record also indicates that the rope in question which was offered as an exhibit is not a flimsy, small type of rope, but rather a heavy Manila Rope which appears to be able to support an individual descending from a scaffold.
Further, the stairway system was built to provide adequate safeguards for individuals in ascending and descending the tank system but was not built for those working inside the tank on scaffolding performing periodic repair work. There was no special stairway built on the inside of the tank for these workmen to use. Workers had to cross over from the scaffolding on the inside of the tank onto the outside walkway.
After examination of the factual circumstances and jurisprudence, we are convinced that the Workmen's Compensation Act, as a matter of public policy was designed to balance the interest of the worker and the employer, with the theoretical concurrent benefit to the public of reducing the cost of doing business. Judge Currault stated the rule as follows in Armstrong v. Land and Marine Applicators, Inc., et al., 463 So.2d 1331 (La.App. 5th Cir.1984):
"Under the act, the employee is forced to relinquish his right to recover for injuries in tort and received damages possibly more in line with the injury; in exchange the workman receives the benefit of faster compensation without the difficulties inherent in tort litigation. The employer who is forced to pay, except in very limited circumstances, is not burdened by high awards which could put the company out of business. Theoretically, the public benefits in that the integrity of the business community is maintained, injured workmen are compensated quickly and the cost of doing business remains reasonable with the result that the prices of goods and services do not overburden the consumer."
To reverse the trial judge here would be in conflict with public policy inherent in the Louisiana Workmen's Compensation Act.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED