640 So.2d 348 (1994)
Iverita KING, Plaintiff-Appellee,
v.
GRAND COVE NURSING HOME, Defendant-Appellant.
No. 93-779.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1994.
Writ Denied May 13, 1994.
*349 Robert Thomas Jacques Jr., Lake Charles, for Iverita King.
Anthony Reginelli Jr., New Orleans, for Grand Cove Nursing Home.
Before DOUCET, YELVERTON and SAUNDERS, JJ.
SAUNDERS, Judge.
In this workers' compensation case, Iverita King, plaintiff-appellee herein, injured her back on September 19, 1991, while lifting a resident during her employment at Grand Cove Nursing Home, defendant and appellant herein.
Plaintiff was employed by defendant on December 28, 1990. After her injury on September 19, 1991, plaintiff filed a claim for workers' compensation benefits which were never paid. This action followed. After trial, the hearing officer rendered judgment on November 16, 1992, ordering defendant to pay plaintiff temporary total disability benefits from the date of injury together with legal interest. Additionally, the hearing officer ordered the defendant to pay "past, present and further [sic] medical treatment and diagnostic testing." The hearing officer denied attorney's fees finding that the defendant denied plaintiff's benefits in good faith.
The defendant appeals contending that the hearing officer manifestly erred in finding that LSA-R.S. 23:1208.1, regarding the effects of an employee's failure to disclose a prior injury to his employer, and LSA-R.S. 23:1081(1)(c), regarding an employer's defense that an employee failed to use a guard or protective device provided for his safety, inapplicable.
Plaintiff, King, answers the appeal praying for attorney's fees on appeal. We affirm the judgment of the hearing officer and deny King's prayer for attorney's fees on appeal.

FACTS
Plaintiff, Iverita King, was employed by defendant, Grand Cove Nursing Home, as a nurse's aid. After she had worked approximately nine months without injury, on September 19, 1991, she injured her back while working.
The evidence at trial revealed that King had sustained several back injuries prior to trial. In October of 1988, King had pulled a muscle in her right shoulder while working at another nursing home. In February of 1989, King was in an automobile accident and sustained both cervical and thoracic strains. On December 24, 1989, while employed in yet another nursing home setting, King strained her thoracic and cervical spine, in addition to sustaining muscle injuries to her left foot and both calves. Finally, in November of 1990, King was diagnosed as having cervical and lumbar strain as a result of another automobile accident.
In the employment application which King completed on December 28, 1990, prior to being hired by defendant, King gave no response to the question:
"Have You Ever Had Trouble With?
*350 Heart ____ Back ____ Lungs ____ Hernia ____."
Additionally, she left the question blank which asked:
"Any Defects In? Speech ____ Sight ____ Hearing ____ Back ____."
In response to a question as to why she had lost time in the past two years, she explained that she had, at one time or another, sustained pulled muscles in the arm, shoulder and foot.
On the same date, December 28, 1990, King signed a document acknowledging her awareness of the defendant nursing home's "lifting policy" that nurse aides were not to lift any patient without first obtaining assistance.
After being hired, King worked for nine months without incident. After the injury of September 19, 1991, she reported her injury to her employer and was treated at Humana Hospital of Lake Charles. She was also treated by Dr. Lynn Foret, in addition to receiving chiropractic care from Dr. Carol Beutler. At the time of trial, July 13, 1992, she had received no compensation benefits or medicals.

ASSIGNMENTS OF ERROR
Defendants contend that the hearing officer erred in granting King workers' compensation benefits on the basis that she failed to honestly and truthfully answer the application for employment, thereby invoking LSA-R.S. 23:1208.1 and second, on the basis that the claimant did not comply with the lifting requirements of Grand Cove Nursing Home, thereby invoking LSA-R.S. 23:1081(1)(c).

LSA-R.S. 23:1208.1 DEFENSE
LSA-R.S. 23:1208.1 states:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
The defendant contends that King is not entitled to workers' compensation benefits because she failed to disclose her previous back problems on her employment application. The hearing officer thoroughly analyzed the applicability of LSA-R.S. 23:1208.1 in his written "Ruling" and "Additional Reasons for Ruling," and determined that, under the facts presented, LSA-R.S. 23:1208.1 was not a valid defense to the payment of compensation.
The hearing officer found that two types of injuries were considered in LSA-R.S. 23:1208.1, the first being a general medical condition for which a claim for benefits is being made. The second type of injury considered in the statute is a specific previous condition constituting a permanent partial disability under LSA-R.S. 23:1378(F) of which the employer must have knowledge, prior to the second injury, in order to receive reimbursement from the Second Injury Fund. The hearing officer found that the previous injuries which King failed to list in her employment application were lumbar and cervical strains, the same injuries which she suffered on September 19, 1991.
The hearing officer found and we agree, that lumbar and cervical strains do not constitute permanent partial disabilities for purposes of the Second Injury Fund under LSA-R.S. 23:1378. A permanent partial disability is defined in LSA-R.S. 23:1378(F) as follows:
F. As used in this Part, permanent partial disability means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment *351 if the employee should become unemployed.

* * * * * *
Subsection "F" of LSA-R.S. 23:1378, although not exclusive, lists those conditions aided by a presumption of permanent disability. A back strain or sprain is not included within this list. As found by the hearing officer, a medical condition not listed in Subsection F could still be proven in court to be a permanent partial disability unaided by a presumption of permanent disability.
In light of the fact that plaintiff worked nine months prior to her injury without incident, we agree with the hearing officer's finding that King's prior back injury was not a permanent partial disability. Therefore, for purposes of the applicability of LSA-R.S. 23:1208.1, King's back strain will be considered a previous general medical condition rather than a specific previous condition constituting a permanent partial disability.
The hearing officer analyzed the applicability of the LSA-R.S. 23:1208.1 defense, as follows:
"In order for the employer's lack of knowledge about claimant's previous back strains to trigger the preclusion of compensation benefits under 1208.1, the previous back strains must `directly relate' to the back strain suffered on September 19, 1991. The question then is what is meant by `directly relate'. There is no case law dispositive of this issue.
Given the harsh consequence of the preclusion in 1208.1 and the jurisprudentially recognized liberality of Louisiana Worker's Compensation Law, the words `directly relate' should be given a narrow, as opposed to a broad interpretation. `Directly relate' should refer to a previous condition that made the injury for which the present claim is filed inevitable or very likely to occur. In [other words], given the pre-job medical condition of the employee, a recurrence of that condition or some other type of injury was bound to happen while the employee was performing the regular job duties for the employer."
* * * * * *
The hearing officer found that the failure to disclose a non-1378 medical condition, which is subsequently aggravated on the job, should not by itself negate the employee's rights to compensation. He found that in such a case, the issue would be whether or not the previous condition caused the accident or whether it was inevitable that while performing the regular job duties, the previous medical condition would be aggravated. The hearing officer continued by stating:
"In the present case, the evidence does not show that it was foreseeable or very likely that claimant's previous back strain would recur while performing the regular job duties of the employer. When asked in deposition, Dr. Lynn Foret stated that recurrence was a possibility, but no more than that. He would not say it was a probability. Claimant worked approximately eight months performing her duties in a satisfactory manner before the accident occurred, indicating that while she might have been prone to back strains, it was not inevitable that it would occur while performing the normal job duties. Furthermore, claimant may have suffered something more than a back strain, perhaps a herniated disc; more diagnostic tests as recommended need to be done before the diagnosis can be final. If a herniated disc is diagnosed, then how can the preclusion of 1208.1 come into play, since claimant had suffered only back and cervical strains before?
"Another reason exists to deny the 1208.1 defense. When there is any legitimate ambiguity concerning the questionnaire or inquiries into an employee's medical history, a court should lean favorably toward the employee in determining whether he knowlingly [sic] failed to answer the questionnaire truthfully. In other words, for the sanction of La.R.S. 23:1208.1 to apply, the employer should have the burden to prove that the questionnaire or inquiries into an employee's medical history were clear and unambiguous, and that conditions were such that an employee fully understood that his answers had to be thorough and complete.
"In the present case defendants failed to meet this burden. No qualified person of *352 the employer's properly went over the application and the questions of past medical history with the employee. The Director of Nursing, who usually does perform that task, was not able to do so in this case. Claimant simply took the form home overnight and filled it out and dropped it by at the office the next morning. The questions, under "Physical Information", were somewhat ambiguous. Specifically, it was asked if the applicant ever had trouble with the heart, back, lungs, or hernia. This could well be interpreted as referring to a chronic or long standing condition, like scoliosis or a herniated disc, not a temporary problem like a back strain. It was further asked if the applicant had a defect in the back. This could well mean a congenital problem. The possibility of ambiguity existed and would not have existed if the employer had thoroughly and carefully explained the questions to claimant.
"There are sound reasons to require an employer to explain a medical history questionnaire to an employee, who is ofter [sic] uneducated. Conceivably, it is to an employer's advantage that the claimant not answer a medical history form correctly or completely because in that case it would not owe any workers' compensation at all for a reinjury, regardless of the circumstances. The potential for abuse would be great and the best safeguard would be to require or to find that it is implicit within the meaning of 1208.1 that the employer present the medical history questionnaire to the prospective employee in a thorough manner."
We agree with the hearing officer's well-reasoned findings and analysis. Insofar as the hearing officer was neither clearly wrong nor manifestly erroneous, we affirm the judgment of the Office of Workers' Compensation.

LSA-R.S. 23:1081(1)(c) DEFENSE
The defendant next contends that, under the defense set forth in LSA-R.S. 23:1081(1)(c), no compensation should be allowed King. LSA-R.S. 23:1081(1)(c) states:
Defenses:
(1) No compensation shall be allowed for an injury caused:
* * * * * *
(c) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him...
The defendant submits that King should be denied compensation benefits for not complying with the regulations regarding the lifting of residents, specifically in not following the rule that an aide is not to lift any patient without first obtaining assistance.
In Shelvin v. Waste Management, Inc., 580 So.2d 1022 (La.App. 3d. Cir.1991), at page 1027, we stated, regarding the employer's burden of proof under LSA-R.S. 23:1081, as follows:
"The employer bears the burden of proof in determining whether or not it shall be exempt from paying compensation under any of the defenses listed in La.R.S. 23:1081(1). La.R.S. 23:1081(2). The employer must prove that the employee had a willful and wanton intention to injure himself. Gooch v. Standridge Brothers, 478 So.2d 980 (La.App. 5th Cir.1985), writ denied, 481 So.2d 1351 (La.1986). The employer must also show that the safety device was provided solely as a guard or protection and that the employee had knowledge of its function and adequacy and deliberately failed to use it. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965)."
The hearing officer found and we agree that the defendant failed in its burden to show that the claimant had a willful and wanton intent to injure herself. Additionally, testimony was elicited from a representative of defendant that the purpose in having assistance in lifting residents is to protect the patient, not to protect the nurse aide. Therefore, the practice of using two people to lift a resident was not implemented solely as a guard or protection for the employee. As such, we find no manifest error in the ruling of the hearing officer and find no merit to this assignment of error.

*353 ANSWER TO APPEAL

King has answered the appeal asking for attorney's fees for this appeal. Attorney's fees were denied by the hearing officer due to his finding that the defendant's reliance upon LSA-R.S. 23:1208.1 as a defense was in good faith. The Hearing Officer found the meaning of the statute unclear on its face. Additionally, the interpretation of the statute had not been clearly established in the appellate courts. For these same reasons, we also deny attorney's fees for this appeal.

CONCLUSION
Based upon the foregoing, the judgment of the hearing officer is affirmed. Costs of this appeal to be paid by defendant-appellant, Grand Cove Nursing Home.
AFFIRMED.