973 So.2d 125 (2007)
Jimmy Allen JAMES, Plaintiff-Appellant,
v.
EXPRESS MARKETING, INC., Defendant-Appellee.
No. 42,740-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2007.
*127 Street & Street by C. Dan Street, Monroe, for Appellant.
Borrello & Dubuclet by Kathleen W. Will, Mark A. Ackal & Associates by Mark Ackal, Lafayette, for Appellee.
Before BROWN, DREW and LOLLEY, JJ.
LOLLEY, J.
Plaintiff, Jimmy Allen James, appeals a judgment from the Office of Workers' Compensation, District 1-E, Parish of Ouachita, State of Louisiana, in favor of Express Marketing, Inc. For the following reasons, we reverse.

FACTS
On December 20, 2005, 26-year-old Jimmy James, a field service technician for Express Marketing, Inc., was installing a satellite dish on a second floor porch at a home in West Monroe, Louisiana. While he was drilling in bolts to secure the equipment, the drill got caught and twisted his body, causing a tingling sensation in his back. James finished the job, and rested the next day-his day off. The following day he went back to work and reported the injury to his manager, Jason Henry. On December 29, 2005, James saw Dr. Richard Frieden, a chiropractor, who recommended that James be restricted to light duty and wrote a note to that effect, which James gave to Henry.
On January 1, 2006, while working light duty at a house in Monroe, Louisiana, James attempted to raise a window when his back "popped," and his "knees gave out" causing him to fall. James was unable to move. His coworker on the job with him and the homeowner helped place him into the company car. James eventually went to the emergency room where the doctor advised him to see an orthopaedic doctor. The orthopaedic doctor took James off work, and wrote a note to that effect which James gave to Henry. A subsequent MRI showed that James suffered a "moderate superiorly migrated central-left posterior disc extrusion at L4-5." A neurosurgeon, Dr. Bernie McHugh, recommended surgery. Express Marketing, Inc. ("Express") denied the claim based on its belief that: the accident may not have occurred; the alleged accident was not timely reported; and, citing La. R.S. 23:1208.1, James failed to truthfully *128 answer previous injury questions at the time of being hired.
James filed his disputed claim for compensation and brought this instant lawsuit. Prior to trial, the parties agreed that James was an employee and agreed to the weekly rate of $454.00. The matter was tried and the Workers' Compensation Judge ("WCJ") found that James was injured by an accident in the course and scope of his employment and that his back injury and ruptured disc were caused by the events described above. However, the WCJ dismissed James' claim with prejudice, concluding that he violated La. R.S. 23:1208.1 warranting a forfeiture of benefits. This appeal ensued.

LAW AND DISCUSSION

Standard of Review
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Nelson v. City of Grambling, 31,303 (La.App.2d Cir.12/09/98), 722 So.2d 358, writ denied, XXXX-XXXX (La.02/26/99), 738 So.2d 588. The question of whether the claimant is entitled to compensation benefits is ultimately a question of fact, and the WCJ's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Lee v. Heritage Manor of Bossier City, 41,828 (La.App.2d Cir.03/14/07), 954 So.2d 276, writ denied, 2007-736 (La.05/18/07), 957 So.2d 157.

Background
Louisiana R.S. 23:1208.1 provides:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
The purpose of La, R.S. 23:1208.1 is to allow employers to ask prospective employees about prior injuries. The supreme court has provided guidance on this very issue and explained that this statute was designed to "encourage the employment of physically handicapped employees who have a permanent, partial disability by protecting employers . . . from excess liability for workers' compensation for disability when a subsequent injury to such an employee merges with his preexisting permanent physical disability." Nabors Drilling USA v. Davis, XXXX-XXXX (La.10/21/03), 857 So.2d 407, 413. Under certain circumstances, a work injury subsequent to a known permanent partial disability entitles an employer to seek reimbursement from the statutorily created Second Injury Fund.
To effectuate the purpose of La. R.S. 23:1208.1, employers give a "Second Injury Fund Questionnaire" which inquires into conditions that may establish a permanent partial disability ("PPD"). Louisiana R.S. 23:1378(F) defines a PPD as "any permanent condition, whether congenital or due *129 to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become injured." Thirty conditions listed under La. R.S. 23:1378(F) are presumed permanently partially disabling. Any other questions asked must be narrowly tailored for the purpose of determining the existence of PPDs. See King v. Grand Cove, 1993-779 (La.App.3d Cir 03/09/94), 640 So.2d 348, writ denied, XXXX-XXXX (La.05/13/94, 641 So.2d 204).
An employee/claimant's untruthful answers on the questionnaire regarding his permanent partial disability which prejudices his employer's ability to seek reimbursement from the Second Injury Fund gives rise to an affirmative defense under La. R.S. 23:1208.1, whereby the injured employee forfeits all compensation benefits.[1]Wise v. J.E. Merit Constructors, Inc., 1997-684 (La.01/21/98), 707 So.2d 1214. However, not every untruthful statement on a medical history questionnaire will result in the forfeiture of workers' compensation benefits for a subsequent work-related injury. Nabors, supra.

Post-Hire Medical History Questionnaire
In his first assignment of error, James argues that the Post-Hire Medical History Questionnaire should not have been admissible as evidence because the questions contained therein were not narrowly tailored and that the warnings contained in the document were wrong and inaccurate.
Louisiana R.S. 23:1317(A) states, in pertinent part:
The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.
The WCJ is not bound by technical rules of evidence or procedure, but all findings of fact must be based on competent evidence. G.N.B., Inc. v. Jones, 29,779 (La. App.2d Cir.08/20/97), 699 So.2d 466.
Here, in addition to a "Second Injury Fund Questionnaire," Express created a "Post-Hire Medical Questionnaire" with 86 additional medical-related questions which employees were made to fill out. While we are in serious doubt that this additional questionnaire is in compliance, we need not determine that issue for admissibility purposes.[2] Since this questionnaire was the *130 crux of Express' argument, the WCJ did not err in allowing it into evidence.

Forfeiture of Benefits
At the outset, we note that the WCJ did find that James was injured in the course and scope of his employment with Express. That determination is not in dispute. The limited issue before us is whether the WCJ erred in finding that James forfeited his right to receive benefits due to the false statement that he made on the Post-Hire Medical Questionnaire. A forfeiture of benefits is conditioned upon the presence of three factors that the employer must prove: 1) an untruthful statement; 2) a direct relationship between the answer elicited and the claim for benefits or ability to receive reimbursement from the Second Injury Fund; and, 3) compliance with the statutory notice requirements. Williams v. Fibrebond Corporation, 27,401 (La.App.2d Cir.09/27/95), 661 So.2d 562. So considering, we must first determine whether James made an untruthful statement by indicating "no" on the questionnaire to "back pain" and "back ache."
After a review of the record, we find that the WCJ committed manifest error in finding that James made an untruthful statement for purposes of La. R.S. 23:1208.1. There is no medical evidence in the record regarding any previous back injury that would rise to the level of a permanent partial disability that hindered James in obtaining employment. The record is clear that James never missed work for "back ache" at any of his previous employment, nor at Express up until this incident. In fact, all of the witnesses testifying at trial stated that James was able to fulfill all the physical responsibilities his job required prior to the work-related injury. Express points to medical notes from the various doctors James visited as a result of his back injury. James informed the doctors about his general back pain stemming from when he worked as a waiter at a restaurant and a childhood injury that he thought may be relevant. James, as any patient would, gave the doctors a complete history to aid in his diagnosis and treatment.
At trial, the WCJ made much of James' response of "rarely" when he was asked about prior back pain. The WCJ believed that "rarely" meant "yes" and James should have indicated the same on the questionnaire. Clearly, the answer is indicative of the fact that James did not have an injury that rises to the level of a permanent partial disability. For purposes of La. R.S. 23:1208.1, general back pain is not covered by the Second Injury Fund. Because we find that James did not submit an untruthful answer to the questionnaire, we pretermit further analysis. Express has failed to prove the first element needed for its affirmative defense. In light of this finding, forfeiture of benefits is not warranted. We reverse and remand for a determination of workers' compensation indemnity and medical benefits.

Penalties and Attorney Fees
James submits that Express should pay penalties and attorney fees for its failure to reasonably controvert his claim. While La. R.S. 23:1201(F) does provides for penalties and attorney fees, it "shall not apply if the claim is reasonably controverted. . . ." A claim for workers' compensation is reasonably controverted if the employer has some valid reason or evidence upon which to base his denial of *131 benefits. Thus, to determine whether the claimant's right to benefits has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140, Attorney's fees should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. J.E. Merit. Constructors, Inc., v. Hickman, 2000-943 (La.06/02/00), 762 So.2d 1114.
Here, the WCJ implicitly denied penalties and attorney fees; however, after a review of the record, we reverse. At trial; the senior claims adjuster, Cindy Casarez, explained that she conducted the investigation into James' claim. She stated that one reason she denied the claim was that Henry, James' manager, indicated to her that James did not report the injury according to their company policy which entails reporting injuries "immediately." Casarez agreed that James reported his injury within 48 hours of the incident but that a claim may be denied for this reason as it "depends on the situation." Casarez was unaware of the statute that governs the timeliness of reporting an incident to the employer, La. R.S. 23:1301, which allows for a report to be made within 30 days after the date of injury. Clearly, denial of the claim based on untimeliness is not supported by the record.
Next, Casarez explained that James admitted to having previous back pain from standing for long periods of time when he worked in the restaurant business and considered this a "pre-existing condition." However, after noting key symptoms that could be present when an individual has a ruptured disc (e.g., pain down the legs), she agreed that James did not have any of these symptoms prior to December 20, 2005. Casarez also seemed to believe that answering "no" to back pain on the questionnaire, when one had general back pain, was per se an untruthful statement for the purposes of La. R.S. 23:1208.1. She admitted that she was unaware of other factors that must be looked into if an employee was thought to have made a "false statement" on the Post-Hire Medical Questionnaire before forfeiting benefits.
Casarez also explained that the claim was denied based on the fact that the December 20, 2005 incident was "an unwitnessed accident," causing her to question if the accident occurred at all. However, she did admit to having information on James' visit to the chiropractor soon after the incident. In addition, she was aware of the events that occurred on January 1, 2006, when a homeowner and a coworker helped James out of the house being worked on, and that James subsequently went to the emergency room. Casarez also admitted reading the medical record from the hospital where James differentiated between his sporadic lower back pain and the pain he felt after the accident.
The record bears out that at every instance James qualified that his previous back pain was a result of standing for long hours, a common occurrence for many. James stated he never needed to go to a doctor for his back prior to this incident; as a result, there are no references, in his medical record to previous symptoms indicative of a ruptured disc. Nothing in the record supports Express' belief that this *132 claim was reasonably controverted, nor does it reflect that a bona fide dispute existed. Accordingly, we reverse the WCJ's failure to award penalties and attorneys fees. We assess $2,000.00 in penalties and award $2,000.00 in attorney's fees.

CONCLUSION
For the foregoing reasons, we affirm the judgment insofar as it held that James was injured in a work-related accident. In all other respects the WCJ is reversed and the matter is remanded for a determination of benefits and medical expenses Jimmy James is entitled to receive in addition to the penalties and attorney fees. Costs of this appeal are to be borne by Express Marketing, Inc.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] The workers' compensation statutes provides two separate anti-fraud forfeiture provisions the employers may use to de fend against paying a claim, La. R.S. 23:1208 and La. R.S. 23:1208.1. As explained by the supreme court in Wise v. J.E. Merit Constructors, Inc., 1997-684 (La.01/21/98), 707 So.2d 1214, La. R.S. 23:1208 applies to situations where, during a pending claim, a claimant has made a false statement for the specific purpose of obtaining workers' compensation. On the other hand, La. R.S. 23:1208.1, at issue in the instant case, is applied when a falsity was made on an employer's medical questionnaire, before the accident or injury.
[2] The notice portion of Express' Post-Hire Medical History Questionnaire states that a fine of not more than $500.00 and/or imprisonment for not more than 12 months AND a forfeiture of compensation may result for failure to answer truthfully. Clearly, La. R.S. 23:1208.1 does not call for fine or imprisonment, while La. R.S. 23:1208 does. As explained above, these two statutes serve different purposes. Therefore, we question whether Express'"notice" combining the two penalties is truly in compliance. In addition, it is highly unlikely that all 86 additional questions would be considered narrowly tailored as is required for the determination of a PPD.