GASKINS, J.
h The claimant, Dana Littleton, appeals from a judgment dismissing her workers’ compensation claim against her employer, Richardson Medical Center. We affirm.
FACTS
The claimant was employed as a registered nurse at Richardson Medical Center (RMC) in Rayville, Louisiana. According to the form initiating her claim with the Office of Workers’ Compensation (OWC), the claimant was at work on April 11, 2004, when she struck her buttock/hip on a handrail in the hospital. She alleged that this incident caused her to suffer from reflex sympathetic dystrophy syndrome (RSD), a painful chronic neurological condition described in the record as a malfunction of that portion of the nervous system that, among other things, regulates blood flow. The claimant asserts that pain caused by her RSD prevents her from working.
RMC refused to pay the claimant workers’ compensation benefits because of what the hospital considered insufficient evidence that she suffered an accident at work that could have caused her to suffer RSD. The matter went to trial before the OWC judge on May 10, 2006. After hearing the witnesses and considering the medical evidence, the. OWC judge concluded that the claimant failed to prove that any injury she suffered at work caused her disability.
The claimant now appeals, urging that the trial court’s finding was manifestly erroneous.
^TESTIMONY

Injury

The claimant testified that on April 11, 2004, she was exiting the nurse’s station to take medication to a patient when she almost collided with a patient. To avoid contact with the patient, she turned and hit a handrail on the wall. The handrail struck her right buttock. She testified that she felt a sharp pain go down her leg and that she was unable to move for a few minutes.
A nurse’s aide, Lucy Collins, testified that she saw the claimant bump into a handrail right outside the door to the *814 nurse’s station. While Ms. Collins finally concluded that a patient was probably with her at the time, she indicated that the claimant could not have been trying to avoid bumping into them.[1] She also testified that the claimant struck her left side, not the right.
The claimant testified that since the accident occurred on Easter Sunday, she had to wait until the following day to inform her supervisor, Linda Blaine, about the incident and that Rosemary Johnson was present when she told Ms. Blaine. However, Ms. Johnson testified that she was not present during any such conversation between the claimant and Ms. Blaine and that she knew nothing about the claimant bumping into a handrail. She recalled the claimant complaining about her knee, but she believed that this predated when the claimant struck the handrail. Also, the claimant did not|sfill out a written incident report or go to the emergency room to be examined after the incident as required by hospital policy.

Medical evidence

The claimant testified that she continued working after her injury, but she developed pain in her right knee. She also went to Disney World on vacation with her family at the end of May 2004. She did a considerable amount of walking on the trip, and she experienced severe right knee pain.
On June 17, 2004, the claimant went to see Dr. Sol Graves at the Orthopedic Clinic of Monroe. According to his notes, she complained of right knee pain of a month’s duration. She told him that she did not recall any injury; however, she mentioned doing lunges while exercising and extensive walking at Disney World. He prescribed an anti-inflammatory medication. When she saw Dr. Graves again on June 22, 2004, she was complaining that the pain had moved up her right leg. Dr. Graves believed that her back was the source of her pain. However, MRI’s on her right knee and back were essentially normal, as was a lumbar myelogram.[2]
In the meantime, on June 18, 2004, the claimant ceased working as an RN at RMC.
In early July 2004, the claimant sought a second opinion from Dr. Douglas Brown, an orthopedic surgeon. He diagnosed her as having inflammatory arthritis, right sciatica, of unknown etiology. According to the information supplied by the claimant, her current problem was the result |4of “other,” as opposed to “vehicle accident,” “work accident” or “accident,” and it occurred during “unknown” activity.
In mid-July 2004, Dr. Brown sent the claimant to Dr. Robert Goodman, a rheu-matologist, for evaluation. She reported pain in her right leg and buttock with a burning sensation in the right knee, thigh and calf. She also recounted changes in the color and temperature of her right leg. According to Dr. Goodman, she denied trauma preceding the knee pain, but talked about several car accidents and her walking at Disney World. He diagnosed her as having RSD and an anxiety disorder.
Several hours after her initial appointment with Dr. Goodman on July 14, 2004, the claimant called his office to report that she had suffered a blow to her right hip and asked if that could have caused her problems. The nurse told her it was un *815 likely. In his deposition, Dr. Goodman agreed with the nurse’s assessment, stating that it would be “very unusual” for RSD to be caused by bumping a hip and that the chances were “relatively small” that it caused the claimant’s injury. In Dr. Goodman’s experience, if RSD is caused by trauma, it is a significant injury, such as a broken bone, a herniated neck disc, or a pinched nerve in the neck or back. Also, the trauma would be to the sciatic nerve or very close to the nerve. He testified that he has never seen it develop as the result of bumping into a handrail.
At Dr. Goodman’s request, the claimant was seen on . July 27, 2004, by Dr. Randall Brewer, who specializes in pain management. His records contain a notation that “[m]uch of her difficulty began after she struck her rt hip at work. No acute injury requiring urgent medical care was reported.”
| 50n August 12, 2004, the claimant was seen in Dr. Goodman’s office again. She complained of significant pain, muscle spasm and burning in the right leg. On a scale of one to ten, she rated her pain at eight and stated that her level of functioning was “very poor.” The notes from this visit state that the claimant was “[histrionic] and manipulative” with the staff and in front of other patients in the waiting room. Although complaining of right ghiteal pain, she refused to allow the nurse practitioner to examine the area, saying she had a torn ligament from a job injury. As her MRI results were normal, she was told that this was unlikely.
The next day, the claimant called Dr. Goodman’s office to request that disability papers be filled out for her. She was told that Dr. Brewer should fill them out; according to the claimant, Dr. Brewer had refused. When Dr. Goodman likewise refused, the claimant became agitated and threatened to talk to her lawyer and “do what I have to do” to get them to fill out the paperwork for her. Dr. Goodman sent her a letter dated August 13, 2004, discharging her from his practice due to her abuse and anger toward the staff. He specified that he was not prepared to complete long-term disability paperwork in her case because there was insufficient evidence at that point to conclude that she required long-term disability. He stated that he would not be coerced by her threats.of “having your attorney make us fill it out.” The claimant did not recall receiving this letter discharging her as a patient, and she denied making a scene in front of other patients.
Dr. Brewer referred the claimant to Dr. Robert Schwendimann, a neurologist at LSUHSC, in late August 2004. The claimant indicated to him | fithat she might have had “a slight trauma” to her right buttock and hip in April or May 2004; however, she “barely recalls this event.” He did not fill out disability forms for the claimant because he thought it was premature to do so. The neurological study conducted on the claimant was normal.
The claimant was next seen by Dr. Brewer’s partner, Dr. William Whyte. She received several lumbar sympathic block injections. However, these injections provided no relief, and the claimant was deemed to no longer be an interven-tional spine candidate. The medical records indicate that on November 1, 2004, she was discharged as a patient from the Louisiana Pain Physicians’ practice due to “multiple episodes of staff abuse.” The claimant denied this.
In the meantime, Dr. Whyte completed a disability form for the claimant; he indicated that her injury was not related to her employment. In a disability form filled out by the claimant, she stated that it *816 was “unknown” when queried about the injury being related to her employment.
On November 10, 2004, the claimant was seen by several doctors at Tulane University Hospital in New Orleans. The report of Dr. Carlos Garcia, a neurologist, recounted that the claimant hit the right gluteal area while taking care of a patient. He diagnosed her as having RSD. When she saw Dr. Donald Richardson, a neurosurgeon, the claimant told him that she hit her right buttock on “the edge of a piece of furniture, desk or something.” According to Dr. Richardson, she said that the pain was like an electric shock down her leg and that it was so severe that she fell to the floor. Upon examination, he noted that the claimant’s right leg was red and |7colder than the left. A differential spinal block was performed and corroborated Dr. Richardson’s diagnosis of RSD. Psychological testing indicated that the claimant had a' chronic pain syndrome which included depression, anger and irritability.
In July 2005, Dr. Richardson implanted a spinal stimulator which was successful in significantly reducing her pain. In his opinion, she is unable to work as an RN. However, he believes that she could do a light job assignment involving mainly paperwork.
The claimant testified that she did not fall to the floor when she bumped into the handrail. She stated that she is always in pain and that she is unable to work. Since the implantation of the stimulator, she can raise her hands and do “a few light things,” whereas she previously said she was unable to pick up “anything heavier than a fork.”

Ruling of OWC judge

After reviewing all of the evidence, the OWC judge found that any disability suffered by the claimant was not the result of an injury she sustained when she struck her hip or buttock on a handrail or other object at RMC. The judge noted the many varying explanations given throughout her medical histories — exercise lunges, excessive walking at Disney World, lifting a heavy object. The OWC judge concluded that the claimant failed to demonstrate the required connexity between the injury and the resulting disability. She noted that only one doctor, Dr. Richardson, found a connexity between the injury and the claimant’s RSD. However, his opinion was based upon a “faulty” history given to him by the • claimant. ^Because the evidence left the probabilities evenly balanced and only showed a possibility of a causative connection between the claimant’s injury and disability, the OWC judge found that “the claimant’s case must fail.”
Judgment dismissing the claimant’s claim with prejudice and at her cost was signed on August 16, 2006.
LAW
A plaintiff in a workers’ compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Hammock v. Weyerhaeuser, 40,464 (La.App. 2d Cir.12/14/05), 917 So.2d 733; Graham v. Nissan, 39,656 (La.App. 2d Cir.6/29/05), 907 So.2d 213. If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the plaintiff fails to carry the burden of proof. Hammock, supra; Player v. International Paper Company, 39,254 (La.App. 2d Cir.1/28/05), 892 So.2d 781.
The worker’s testimony alone may be sufficient to satisfy this burden, provided that two elements are satisfied: first, there must be no other evidence which discredits or casts serious doubt on the worker’s version of the incident; and *817 second, the worker’s testimony must be corroborated by the testimony of fellow workers, his spouse and other close family members, friends, or the introduction of medical evidence. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Kidd v. Brown Radiator & Frame, 38,729 (La.App. 2d Cir.12/22/04), 890 So.2d 796, writ denied, 2005-0172 (La.3/24/05), 896 So.2d 1042. If a claimant’s testimony 19contains discrepancies and inconsistencies, that testimony alone does not meet the burden. Hammock, supra; Harris v. General Motors, Truck and Coach Division, 577 So.2d 1160 (La.App. 2d Cir.1991).
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the OWC judge. Hammock, supra; Lewis v. Chateau D’Arbonne Nurse Care Center, 38,394 (La.App. 2d Cir.4/7/04), 870 So.2d 515. Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Hammock, supra; Culotta v. A.L. & W. Moore Trucking Company, 35,344 (La.App. 2d Cir.3/5/03), 839 So.2d 1063, writ denied, 2003-0998 (La.5/30/03), 845 So.2d 1052. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own inferences and evaluations are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989).
DISCUSSION
 We note at the outset that the claimant argues that she is entitled to a presumption of causation in this case. In Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977), the supreme court stated:
[a] claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
hnThis rule, further discussed in Housley v. Cerise, 579 So.2d 973 (La.1991), has become known as the “Housley presumption.” The application of this presumption to the facts is itself a question of fact subject to manifest error review. Detraz v. Lee, 2005-1263 (La.1/17/07), 950 So.2d 557. The OWC judge in this case did not apply the presumption to the claimant’s case. We detect no manifest error in her decision not to do so because the medical evidence conflicted about whether there was a reasonable possibility of causal connection between the accident and the disabling condition.
The evidence indicates that the claimant suffers from RSD and that the onset of this condition was sometime after she struck her hip on a handrail at work in April 2004. As the OWC judge correctly recognized, the difficulty in this case arises with the conflicting medical evidence concerning the likely cause of the claimant’s RSD. The burden of proving this connection rests with the claimant. Both Dr. Goodman and Dr. Richardson opined that RSD is ordinarily caused by a trauma of some kind. Dr. Goodman’s testimony indicated that the trauma would have to be something significant such as falling down stairs. He also testified that it could also be from a slipped disc, a bone spur, arthritis or a pinched nerve caused by lifting something heavy.
*818 Dr. Goodman’s records do not show that the claimant gave him a clear description of her injury at work; the entry concerning that injury in the doctor’s records related to a post-diagnosis phone call. There was no indication that she told the doctor that she had a shooting pain at the time of Inthe incident that would suggest injury to a nerve. Further, Dr. Goodman said that since the sciatic nerve and the nerve branches that lead to it are fairly deep inside the body, there would be only a “small possibility” that a blow to the hip could cause RSD.
Dr. Richardson did connect the claimant’s condition with the trauma she related to him. However, his impression of the severity of the accident differed even from that related by the claimant at trial. According to Dr. Richardson, the claimant reported a “shock down her leg” and told him that the impact made her leg give way. Dr. Richardson was under the impression that the accident was sufficiently severe that it caused the claimant to fall to the floor; at trial, the claimant denied falling. Additionally, the records do not reflect that the claimant told any of the doctors she saw before Dr. Richardson that the impact caused her to feel a “shock down her leg.” In fact, the history reported by Dr. Schwendimann indicates that the claimant “barely recalls” the event and that she may have had some “slight trauma” that caused bruising to her right hip and buttock.
The OWC judge described the claimant’s evidence on causation as being evenly balanced between a showing that the work-related accident caused the claimant’s RSD and a showing that the condition was caused by some other unknown event. With this assessment of the evidence, we find no error. Thus, the OWC judge correctly denied the claimant’s claim for compensation.
I ^CONCLUSION
The judgment of the OWC judge is affirmed. Costs of this appeal are assessed against the appellant/claimant, Dana Lit-tleton.
AFFIRMED.

. Hospital records indicate that there was only one patient in the unit where the claimant and Ms. Collins were working that day.

. The report on the lumbar MRI stated that the patient had been "[ijnjured while lifting heavy object.” The claimant denied saying that.