MOORE, J.
 

 | ,The employer, J.P. Morgan Chase, and its insurer, Liberty Mutual, appeal a judgment finding that the claimant, Angela Louis, sustained a work-related injury resulting in a protruded disc in her neck, ordering them to provide surgery, and assessing a penalty of $2,000 and attorney fee of $5,000. For the reasons expressed, we affirm in part and reverse in part.
 

 Factual Background
 

 Ms. Louis was employed at a Chase office in Monroe at an average weekly wage of $546.02. She had worked at Chase since 1998; in 2006, she was a “team leader,” charged with distributing and processing large boxes of mortgage documents. She testified that she had to move boxes weighing from 25 to 40 lbs.
 

 For several months in 2004 she saw a chiropractor, Dr. Michael Harvey, for neck and lower back pain; she also described symptoms of carpal tunnel syndrome and ulnar compression in her right hand, but she ascribed none of these problems to her job at Chase. In April 2006, she was in an auto accident resulting in neck pain bad enough that she took off work for about two months. She received adjustments from Dr. Harvey and other treatment from her family doctor, and testified that her neck pain had resolved by June. Meanwhile, however, the pain in her wrist got so bad that she had carpal tunnel surgery at E.A. Conway Hospital on June 22. In a visit to Conway for an unrelated complaint on October 12, Ms. Louis told the physician’s assistant that she had no complaint with her neck.
 

 In late September or early October, Chase had a reduction in force (“RIF”) with the result that Ms. Louis had to handle more boxes than before. |2In late
 
 *443
 
 October or early November — she could not recall the exact date — she was taking a box from a coworker and removing boxes from the gondola when she felt a sharp pain in her neck, followed by dull pain going down her shoulders, arm and back. She knew she was hurt, but not bad enough to take off work; she testified mentioning this event to several coworkers, notably Dawn Wiggins, but admitted not reporting it to her manager, Wayne Jefferson.
 

 E.A. Conway’s records showed that she phoned on October 29, telling the operator her neck “started hurting again,” but that she received no further medical treatment for her neck. She testified that she continued to work in pain; when Dawn and other coworkers asked her why she could not turn her head, she said she’d hurt herself at work. She went to her chiropractor, Dr. Harvey, on December 1, and to her family doctor, who ordered an MRI on January 11, 2007. After seeing the results, he referred her to a neurosurgeon, Dr. Bernie McHugh.
 

 On the initial visit in February 2007, Dr. McHugh’s physician’s assistant noted, “She returned to work in September 2006; since November, she has experienced cervical pain with radiation” — no mention of work-related. Dr. McHugh testified that the MRI showed “moderate to severe sten-osis” at C-4/5, for which he recommended pain management and epidural injections. He described stenosis as purely degenerative, likely aggravated by the auto accident. On cross-examination, he agreed that lifting boxes at work was a “reasonable assumption” to explain some exacerbation. On a second visit, March 1, he discussed intracervical Rdiskectomy and fusion at C — 1/5. She agreed, and they scheduled the surgery for April 9.
 

 Ms. Louis then went to her manager, Wayne Jefferson, and told him she would need time off for the surgery. According to Ms. Louis, he advised her that she would have to contact the compensation carrier, Liberty Mutual, which she did; the adjuster emailed her forms to fill out, which she did; and she agreed to put off the operation until Liberty Mutual approved the procedure. She also testified that Liberty Mutual sent her to a Dr. Puaranton in Shreveport, who agreed that she needed the operation, but the insurer had still not approved it. Neither Jefferson, nor the insurance adjuster nor Dr. Puaranton was called to testify.
 

 Ms. Louis also described a subsequent incident, on April 9, 2007, when she fell down a short flight of stairs as she was leaving work. She testified that she promptly reported this to the security office. The incident hurt her left hand, neck and knees, but is not part of the instant claim. She has continued to work.
 

 Procedural History
 

 Chase filed the instant disputed claim on August 20, 2007, stating that Ms. Louis “alleges” a neck injury on November 1, 2006, and that they had a bona fide dispute over occurrence, causation, disability, medical treatment and preexisting conditions. Ms. Louis then filed her own disputed claim, which was consolidated with Chase’s claim; her Form 1008 is not included in the consolidated appellate record. She demanded approval of the surgery with Dr. McHugh, weekly benefits of $420 during her recovery, |4and a penalty and attorney fee. Chase raised an exception of prescription which it apparently withdrew.
 

 At trial in May 2008, Ms. Louis testified as noted above. She admitted not reporting the injury to her manager until March 2007, as she was not aware of the reporting requirement until then. She insisted that she had told several coworkers about it, and maintained that even though Dr. McHugh’s office records did not reflect it,
 
 *444
 
 she advised him the injury occurred at work. Dawn Wiggins, another team leader, testified that Ms. Louis told her her neck started hurting after she lifted some boxes. Coworkers Rosemary Thomas and Wanda Crockhom confirmed that Ms. Louis said she had hurt her back, but they could not recall her saying how it happened. Courtney Burrell, another coworker, corroborated that Ms. Louis stumbled down the stairs in April 2007. Ms. Burrell stated that Chase provided no training for reporting accidents, and Ms. Crockhom agreed that not all supervisors relayed this information to new hires. As exhibits, Ms. Louis introduced her Louisiana Pain Care record and Dr. McHugh’s records and deposition.
 

 Chase called two witnesses. Chad Ellis, a coworker, testified that Ms. Louis never reported an accident and never told him her injury was work-related. Amy Squyres, a warehouse supervisor, testified that in November 2006, Ms. Louis had no immediate supervisor other than the branch manager, Jefferson. She also testified that Chase’s policy of reporting work-related injuries to a supervisor was part of the full FMLA notice given to all new hires, available on the website and posted on a placard | ¡¡downstairs. On cross-examination, Ms. Wiggins and Ms. Burrell testified that Chase’s attorney had interviewed them in May 2006 about Ms. Louis’s accident. As- exhibits, Chase introduced Dr. Harvey’s office notes and Ms. Louis’s complete E.A. Conway record.
 

 Action of the WCJ
 

 Ruling from the bench in August 2008, the WCJ recapped the evidence, finding that Ms. Louis’s neck pain from the auto accident had completely resolved by October 12, 2006. The WCJ noted Dr. McHugh’s diagnosis of a preexisting degenerative condition aggravated by the auto accident, but accepted his concession that lifting heavy boxes could further exacerbate this: “It added to her symptomolo-gy which led its way to surgical intervention.” Because of the recent RIF, Ms. Louis had to process more boxes and hurt herself removing them from the gondola; the incident and injury were corroborated by Ms. Wiggins and others. Chase did not adequately publish its reporting policy to Ms. Louis; even if it had, she had no direct supervisor to whom to report an accident. This, according to the WCJ, explained her failure to report the injury promptly, and Chase was not prejudiced by the late reporting. In fact, the WCJ commended Ms. Louis for her willingness to proceed with surgery under her private insurance instead of charging it to comp. She concluded that Ms. Louis was “clearly” entitled to the surgery and medical treatment.
 

 Finally, the WCJ held that Chase did not reasonably controvert the claim. Each of its defenses was flawed: the late report of injury, because Chase failed to train employees how to report injuries; the pri- or injury from |fithe auto accident, because the E.A. Conway record and coworker testimony proved this had resolved by October 2006; and the preexisting stenosis, because Dr. McHugh stated it could be aggravated by trauma. The court assessed a penalty of $2,000 and attorney fee of $5,000.
 

 Chase has appealed, raising three assignments of error.
 

 Discussion: Failure to Report Accident Timely
 

 By its first assignment of error, Chase urges the WCJ was clearly wrong to find no prejudice to its investigation of the claim by Ms. Louis’s é/Lmonth delay in reporting the alleged work injury. Chase cites La. R.S. 23:1301, which prohibits any proceeding for compensation “unless notice of the injury has been given to the employ
 
 *445
 
 er within thirty days after the date of the injury[.]” Chase reiterates that Ms. Louis did not report it to the manager until March 2007, and none of the medical records reflected that her neck pain was work-related. Chase also shows that it interviewed several coworkers in May 2007, thus satisfying its duty to investigate. It also cites various inconsistencies in Ms. Louis’s testimony, chiefly her inability to pinpoint the date of the incident. It concludes that all these facts combined to create prejudice.
 

 Ms. Louis responds that under La. R.S. 23:1305, a delay in reporting an incident will not defeat a claim unless it prejudices the employer.
 
 Hammock v. Weyerhaeuser,
 
 40,464 .(La.App. 2 Cir. 12/14/05), 917 So.2d 733. Long delays may be excused when the claimant does not initially appreciate the severity of her injury.
 
 West v. Bayou Vista Manor,
 
 371 So.2d 1146 (La.1979). She submits that she should not be penalized for her 17reasonable effort to work through the pain or for Chase’s failure to publish its reporting policy.
 

 As it pertains to this case, notice of accident or injury is regulated by three sections of the Workers’ Compensation Act. Under La. R.S. 23:1301, “No proceeding under this Chapter for compensation shall be maintained unless notice of the injury has been given to the employer within thirty days after the date of the injury or death.” Under La. R.S. 23:1302, the employer must print and post at some convenient and conspicuous point in its place of business a notice advising employees of these reporting requirements; further, “If the employer fails to keep such a notice posted, the time in which the notice of injury shall be given as provided in R.S. 23:1301 shall be extended to twelve months from the date of injury.” Finally, La. R.S. 23:1305 provides, “Lack of notice or delay in giving notice shall not be a bar to proceedings under this Chapter if it is shown that the employer, or his agent or representative, had knowledge of the accident or that the employer has not been prejudiced by such delay or lack of notice.”
 

 Provisions regarding notice of injury are liberally construed in favor of the claimant unless the rights of the employer are prejudiced.
 
 Miller v. Christus St. Patrick Hosp.,
 
 2003-1631 (La.App. 3 Cir. 4/21/04), 872 So.2d 574,
 
 writ denied,
 
 2004-1196 (La.10/1/04), 883 So.2d 1010. Lack of prejudice may be inferred from medical reports linking the claimant’s condition to a work-related accident and eyewitnesses confirming that a work-related accident occurred.
 
 James v. Express Marketing Inc.,
 
 42,740 (La.App. 2 Cir. 12/5/07), 973 So.2d 125,
 
 writ denied,
 
 2008-0062 (Laj3/7/08),g 977 So.2d 910. The WCJ’s findings as to sufficiency of notice are subject to manifest error review.
 
 Hammock v. Weyerhaeuser, supra.
 

 Chase correctly shows that Ms. Louis did not formally report her accident and injury until
 
 %
 
 months after it occurred; hence, she was technically in violation of R.S. 23:1301. However, Chase also showed that even with this delay, it interviewed four of Ms. Louis’s coworkers and obtained her complete E.A. Conway record, none of which strongly showed a work-related injury. Chase has not suggested what, if anything, it could have done differently with a 30-day notice that complied with R.S. 23:1301.
 

 Moreover, there was conflicting evidence as to how Chase advised employees of the reporting requirements. Ms. Squyres testified that this information was “available” on the website, posted on a placard downstairs and given to all new hires, but there was no documentary evidence of compliance with R.S. 23:1302, such as a copy of
 
 *446
 
 the notice. Without proper notice to employees, the reporting period is extended to 12 months. Moreover, Ms. Crockhom and Ms. Burrell testified that supervisors did not directly convey reporting requirements to their employees, and Ms. Louis herself claimed to be completely unaware of it. On this equivocal record, we cannot say the WCJ was plainly wrong to find no prejudice.
 
 Hammock v. Weyerhaeuser, supra; Holcomb
 
 v.
 
 Bossier City Police Dept,
 
 27,095 (La.App. 2 Cir. 8/25/95), 660 So.2d 199. This assignment of error lacks merit.
 

 Finding of a Compensable Work Injury
 

 By its second assignment of error, Chase urges the WCJ was plainly wrong to find a compensable work injury requiring surgery. Citing La. R.S. |323:1031.1, Chase argues that stenosis is a degenerative condition and not compensable. It also argues that Dr. McHugh attributed her need for surgery to the stenosis, not to the work incident. It concludes that the medical evidence was insufficient to prove that any work-related injury necessitated the surgery.
 

 Ms. Louis responds that although the date of injury was uncertain, Ms. Louis’s testimony, along with that of her coworkers, proved that she injured her neck by moving heavy boxes at work. In addition, Dr. McHugh established causation by agreeing that this activity could aggravate the preexisting condition and contribute to the need for surgery. She submits that the WCJ’s findings are not plainly wrong.
 

 An occupational disease, for purposes of the Workers’ Compensation Act, is defined in La. R.S. 23:1031.1 B:
 

 An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related and perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
 

 The claimant asserting an occupational disease must prove, by a preponderance of evidence, a disability related to an employment-related disease, that it was contracted during the course of employment, and that it is the result of the work performed.
 
 Lee v. Christus Schumpert,
 
 36,733 (La.App. 2 Cir. 1/29/03), 836 So.2d 1214, and citations therein. Moreover, when a claimant suffers from a preexisting medical condition, she may still 1 lf)prevail if she proves that an accident “aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed.”
 
 Peve-to v. WHC Contractors,
 
 93-1402 (La.1/14/94), 630 So.2d 689;
 
 Smith v. Morehouse General Hosp.,
 
 27,117 (La.App. 2 Cir. 6/21/95), 658 So.2d 232. The preexisting condition is presumed to have been aggravated by the accident if the employee proves (1) the disabling symptoms did not exist before the accident; (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the activation of the disabling condition.
 
 Peveto v. WHC Contractors, supra; Smith v. Morehouse General, supra.
 

 Even though stenosis and degenerative disc disease are excluded from the definition of occupational injury under R.S. 23:1031.1 B, the courts have awarded compensation for the aggravation of those con
 
 *447
 
 ditions when the claimant satisfies the criteria of
 
 Peveto v. WHC Contractors. Doucet v. Baker Hughes Production Tools,
 
 93-3087 (La.3/11/94), 635 So.2d 166;
 
 Smith v. Morehouse General, swpra; Hayes v. Louisiana State Pen.,
 
 2006-0553 (La.App. 1 Cir. 8/15/07), 970 So.2d 547,
 
 unrit denied,
 
 2007-2258 (La.1/25/08), 973 So.2d 758;
 
 Begue v. Crossover Inc.,
 
 2003-0267 (La.App. 1 Cir. 11/21/03), 868 So.2d 100.
 

 Ms. Louis’s showing is far from the “clear” case of causation that the WCJ seemed to perceive, but on close review it sufficed to meet the burden of a preponderance of the evidence. Chase proved her preexisting stenosis, |nwhich was obviously not compensable under R.S. 23:1031.1 B, and that she aggravated it in the April 2006 auto accident. However, there is no evidence to contradict the E.A. Conway clinic record that as of October 12, 2006, she had no complaint with her neck. She testified that serious pain began with the accident at work and continued thereafter. She did not report a work-related accident to any healthcare provider (or to Chase) for 4
 
 %
 
 months, but she continued to work through this time and apparently did not appreciate the severity of her injury. Admittedly, Dr. McHugh did not state that her job may have aggravated the stenosis until he was cross-examined in a deposition in March 2008, and yet Chase offered no positive medical evidence to contradict this. Notably, Ms. Louis testified that the insurer sent her to a Dr. Puaranton in Shreveport, but Chase did not call this witness to testify. In short, the medical evidence supported a reasonable possibility of causation between the work-related activity and the aggravation.
 

 On this conflicting evidence, we cannot say the WCJ was plainly wrong to find that Ms. Louis proved, by a preponderance of the evidence, that her employment at Chase aggravated a preexisting condition of stenosis, requiring an intracervical dis-kectomy and fusion as recommended by Dr. McHugh. This assignment lacks merit.
 

 Penalty and Attorney Fee
 

 By its third assignment of error, Chase urges the WCJ was plainly wrong to assess a penalty and attorney fee, in light of the fact that Chase investigated the claim and filed a Form 1008 to seek the court’s assistance |12in resolving the matter. It reiterates that no witness actually saw her hurt herself and the medical records are silent as to whether her condition was work-related. It concludes that Chase acted in good faith in handling the claim, thus negating the penalty and attorney fee.
 

 Ms. Louis responds that acting in good faith is not the standard; to avoid a penalty and attorney fee, the employer is required to “reasonably controvert” the claim. La. R.S. 23:1201 F. She submits that merely filing a Form 1008 and relying on the late report of injury will not suffice.
 
 Hammock v. Weyerhaeuser, supra; Elswick v. Highway Transport,
 
 96 0014 (La. App. 1 Cir. 9/27/96), 680 So.2d 1364. Finally, she argues that the coworker interviews and medical records fully supported her account of sustaining a work-related injury. She concludes the WCJ did not abuse its discretion in assessing the penalty and fee.
 

 Failure to provide payment of benefits will result in a penalty and attorney fee “unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” La. R.S. 23:1201 F(2);
 
 McCarroll v. Airport, Shuttle Inc.,
 
 2000-1123 (La.11/28/00), 773 So.2d 694. The phrase “reasonably controvert” means that the defendant must have “some valid reason or evidence on which to base his denial of benefits.”
 
 Brown v.
 
 
 *448
 

 Tex-LA Cartage Inc.,
 
 98-1063 (La.12/1/98), 721 So.2d 885;
 
 Williams v. Mark Johnson Plumbing,
 
 38,954 (La.App. 2 Cir. 9/22/04), 882 So.2d 1193. Awards of penalties and attorney fees in compensation cases are essentially penal, and are imposed to deter indifference and undesirable conduct by employers and their | ^insurers toward injured workers.
 
 Trahan v. Coca Cola Bottling Co.,
 
 2004-0100 (La.3/2/05), 894 So.2d 1096;
 
 Langley v. Petro Star Corp. of La.,
 
 2001-0198 (La.6/29/01), 792 So.2d 721. Although the benefits in the Workers’ Compensation Act are to be liberally construed, penal statutes are strictly construed.
 
 Trahan v. Coca Cola Bottling, supra; Langley v. Pe-tro Star Corp. of La., supra.
 
 Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant’s entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative.
 
 J.E. Merit Constructors Inc. v. Hickman,
 
 2000-0943 (La.1/17/01), 776 So.2d 435;
 
 James v. Express Marketing, supra.
 

 On close review, we are constrained to find that Chase reasonably controverted this claim by providing a bona fide dispute as to Ms. Louis’s entitlement to benefits. Shortly after it received Ms. Louis’s belated report of injury, Chase investigated by questioning at least four of her coworkers. According to their trial testimony, not one of them saw Ms. Louis hurt herself; Ms. Wiggins said Ms. Louis ascribed her back pain to her work; the rest recalled Ms. Louis complaining of back pain but never saying anything about how it arose. Chase also obtained medical records from Dr. McHugh, E.A. Conway and Dr. Harvey, none of which ascribed her current complaints to a work-related injury; only Dr. McHugh’s deposition, over a year later, suggested a possibility of medical causation. The medical records also proved a preexisting condition very similar to her current one.
 

 In short, this is not a case in which the employer indifferently and undesirably refused to pay, or relied on willful ignorance of the facts of the 114claim. Chase plainly conducted an investigation which turned up some, but precious little, evidence to verify Ms. Louis’s claim, and much to refute it. While her showing was ultimately sufficient to prove her entitlement to benefits, it was by no means strong. It was truly a “doubtful case.”
 
 James v. Express Marketing, supra.
 
 Chase offered factual and medical evidence commensurate with Ms. Louis’s showing; in so doing, it reasonably controverted the claim under R.S. 23:1201 F(2) and negated the penalty and attorney fee. This assignment of error has merit.
 

 Conclusion
 

 For the reasons expressed, the judgment is affirmed insofar as it found a compensable injury and ordered J.P. Morgan Chase and Liberty Mutual to provide the surgery recommended by Dr. McHugh. The assessment of a penalty and attorney fee, however, is reversed. Each side is to pay its own costs.
 

 AFFIRMED IN PART AND REVERSED IN PART.