LOLLEY, J.
hThis appeal arises from the Office of Workers’ Compensation District 1-E, Franklin Parish, Louisiana, where the workers’ compensation judge (‘WCJ”) ruled against the Town of Winnsboro, the former employer of Jay Marshall, the claimant. Marshall was awarded disability benefits, compensation for medical treatment, penalties, and attorney fees. The Town of Winnsboro appeals, and for the following reasons, we affirm.
FACTS
Jay Marshall worked in the water department for the Town of Winnsboro (‘Winnsboro”) for 33 years. He moved up the ranks and ultimately served as a supervisor. As water supervisor, he directed a crew of three men,-but also participated in the heavy labor. Marshall ■ admits he has had several back injuries throughout the years, but in the-past, after he sought treatment, he recovered and returned to work. In 2010, Marshall executed his intention to enter into the Deferred Retirement Option Plan (“DROP”). See La. R.S. 11:447, et. seq. Through DROP, Marshall planned to retire from the water department at the age of 53.
On November 1, 2012, while he was using a probing rod to search for a water line, Marshall hurt his back as he pulled the rod out of ground. The resulting injury was witnessed by his three crew members. According to the testimony of the crew members, Marshall was in visible pain due to the injury and unable to do anything for the rest of day. After that day, Marshall never again participated in the heavy labor. . Although Marshall did return to work, he did not immediately recover and was only able to work in a limited capacity. ¡.
12Medical evidence revealed that Dr. Roland Ponarski, Marshall’s family physician, regularly examined Marshall. In 2002, Marshall mentioned back pain, during an exam. Over the next few years Marshall continued to see Dr. Ponarski, mostly to •refill his prescription for Vieoprofen, a narcotic with Motrin, which Dr. Ponarski prescribed for Marshall’s back pain. In 2006, after further complaints of back pain, Marshall received Toradol and steroid injections in his lower back. At this time, Dr. Ponarski also added muscle relaxants to Marshall’s medications. In 2008 and 2010, Marshall received more injections in his back. On February 6, 2012, Dr. Ponarski ordered an MRI for Marshall due to persistent back pain.
In November, 2012, after the accident, Marshall went to Dr. Ponarski with a chief complaint of back pain. . Dr. Ponarski- did not recall Marshall mentioning- a recent work accident during the visit. He described Marshall’s condition as “gradual onset.” Dr. Ponarski continues to prescribe medications to Marshall for back pain, He referred Marshall to a neurosurgeon after the MRI-revealed bulging discs at L2-3, L3-4, and L5-S1 ,and some encroachment on the spinal canal at L3-4.
On December 5, 2012, on referral by Dr. Ponarski, Marshall was treated by Dr. Bernie G. McHugh, a neurosurgeon. After the initial examination, Dr. McHugh referred Marshall to Louisiana Pain Care. Marshall provided Dr. McHugh with an initial history of back pain beginning with a work injury in the 1990s. On May 6, 2013, Marshall returned to Dr. McHugh complaining of lower back pain and pain radiating |Rthrough his hips and down into his- lower extremities. During his deposi *800 tion, Dr. McHugh stated that someone with these types of back injuries should be performing only sedentary work. He also stated that degenerative disc disease like Marshall’s condition usually requires surgery. Although he could not tell how much an accident would exacerbate Marshall’s condition, he did state that degenerative disc disease in conjunction with a traumatic event would certainly worsen and increase pain. When comparing the MRIs taken before and after November 1, 2012, Dr. McHugh found the L5-S1 protrusion was more significant and a grade one misalignment of the vertebral bodies was now present, and was not present in the older MRI.
Marshall was examined by Dr. James Gordon at Louisiana Pain Care on December 10, 2012, after referral by Dr. McHugh. Dr. Gordon noted the failed conservative treatment, but recommended more steroid injections in an effort to avoid surgical intervention. After the injections, Marshall had temporary relief, and Dr. Gordon referred Marshall back to Dr. McHugh for - a discograph. Dr. Gordon also compared the two MRIs, and found the post-accident MRI showed an L5-S1 disc protrusion that was not present on the pre-accident MRI. Dr. Gordon restricted Marshall to light duty.
The discograph demonstrated concordant pain syndrome at L3-4 and L5-S1. After reviewing these results, Dr. McHugh and Marshall discussed surgery to address the progression of Marshall’s degenerative disc disease. Ultimately, on April 4, 2014, an anterior lumbar interbody fusion was performed at L3-4, L4-5, and L5-S1.
JjRisk Management, Inc. (“Risk Management”), the workers’ compensation adjuster for Winnsboro, sent Marshall to Dr. Jorge Martinez for a second' opinion examination in November 2013. At this time, Marshall provided a history including the work injury occurring on November 1, 2012. Dr. Martinez reported all examinations were essentially normal. He compared the pre and post-accident MRIs and found them to be basically the same, but noted some aggravation. Dr. Martinez did not recommend surgical intervention, stating the treatment Marshall had received so far was sufficient and was all that could be done. He recommended over-the-counter analgesics and light duty work as a permanent restriction.
Risk Management received a Form 1007, injury report, in January 2013, referencing Marshall’s accident. On September 18, 2013, Dr. Ponarski wrote a letter to Della Hildebrand, a Risk Management employee, stating Marshall was unable to perform his job duties due to his back injury. Hildebrand responded questioning the work restriction because she had received information from Clarence Stinson, Marshall’s supervisor, that Marshall had retired through DROP. Risk Management denied Marshall’s claim, did not pay indemnity, and did not provide for any medical treatment. Marshall obtained treatment through his insurance.
Marshall filed the instant dispute on October 25, 2013. A mediation was held, but the issues between the parties were not resolved. Marshall’s average weekly wage and corresponding compensation rate were stipulated to by the parties before trial. During trial, the depositions of the treating physicians were entered into evidence, and Marshall and other witnesses | jjtestified to the events concerning this accident. Judgment was rendered in favor of Marshall. The trial court found Marshall was entitled to temporary total disability benefits (“TTD”) beginning September 18, 2013, the first finding of disability, and after November 1, 2013, those benefits converted to supplemental earning benefits (“SEB”). The trial court also awarded *801 Marshall $500.00 as a penalty and $2000.00 in attorney fees, together with interest from the date the judgment was signed.
In December 2014, the parties returned to court for a hearing on Winnsboro’s motion for new trial and/or motion for amendment of the judgment. The WCJ granted the motion in part to amend the judgment to exclude the language concerning the limitation of-104 weeks of SEB, as that issue was not brought up at trial. However, the WCJ declined to remove from the judgment the finding that Marshall did not voluntarily withdraw‘from the workforce, as that finding was the basis for the award of SÉB. Winnsboro appeals.
DISCUSSION

Finding a ivork-related injury

Winnsboro urges that the WCJ committed manifest error by using lay testimony to overcome the medical testimony of Marshall’s examining physicians in finding that Marshall proved he suffered a work-related injury and disability given his long history of lower back problems. It further argues the fact that Marshall did not originally provide a history to doctors | (¡citing the November 2012 accident as the cause of his injury casts serious doubt on his claim and disputes that the accident actually occurred. We disagree.
In a workers’ compensation proceeding, the claimant bears the burden of demonstrating by a preponderance of the evidence that an employment accident resulted in disability. Blanson v. GM Inland Fisher Guide, 33,498 (La.App.2d Cir.06/23/00), 764 So.2d 307, 310. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Id. While the worker’s testimony alone may be sufficient to discharge that burden, it will be inadequate where: (1) other evidence discredits or casts serious doubt upon the worker’s version of the incident; or (2) the worker’s testimony is not corroborated by the circumstances following the alleged incident. Such corroboration, of course, may include medical evidence and the testimony of fellow workers, spouses, or friends. The key requirement is that a precipitous event directly produce sudden objective findings of an injury rather than a mere manifestation of a gradual deterioration or progressive degeneration. Id.
An employee’s pre-existing condition does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Harris v. Casino Magic, 38,137 (La.App.2d Cir.01/28/04), 865 So.2d 301, 305, writ denied, 2004-0502 (La.04/08/04), 870 So.2d 275. When a claimant jproves that before the accident he had not exhibited disabling symptoms, but that 17commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, .and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, a claimant’s work injury is presumed to have aggravated, accelerated or combined with any preexisting disease or infirmity to produce his disability. Blanson, supra.
■ Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Newsome v. Atmos Energy, 41,413 (La.App.2d Cir.08/23/06), 938 So.2d 1098. The WCJ shall not be bound by technical rules of evidence or procedure other than those provided by statute, but all findings of fact must be based on competent evidence. La. R.S. 23:1317; Futch v. Horseshoe Casino, 49,144 (La.App.2d *802 Cir.07/23/14), 146 So.3d 818, 828, writ denied, 2014-1934 (La.11/21/14), 160 So.3d 973. Whether the claimant has carried his burden of proof and whether testimony ,is credible are questions of fact to be determined by the WCJ. La. R.S. 23:1221(1)(c); Newsome, supra. Where there are two permissible views of the evidence, a fact-finder’s choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factfinder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Massey v. Fresenius Medical Care Holding, 49,407 (La.App.2d Cir. 11/19/14), 152 So.3d 1019, 1023, writ denied, 2014-2650 (La.03/06/15), 160 So.3d 1290.
In support of its. argument that the WCJ committed manifest error by using lay testimony to overcome the medical testimony of Marshall’s examining physicians, Winnsboro cites Tantillo v. Liberty Mutual Ins. Co., 315 So.2d 743 (La.1975), claiming “[generally, medical testimony which js not in conflict cannot be overcome by lay testimony.”
In Tantillo, supra at 748-49, the Louisiana Supreme Court actually stated:
It is generally true that medical testimony which is not in conflict cannot be overcome by lay testimony. Nevertheless, in every case it is the totality of the evidence, medical and lay,., which must be examined by the. court in making its determination of whether to grant an award for disability. Great weight,, almost to the point of exclusion of other evidence, is .given to uncontradicted medical evidence which, is directed toward a complex scientific question. However, in all cases, it is the judge’s function to determine the weight which is- to be accorded the medical testimony as well as the lay testimony. Lay testimony has great probative value in establishing certain .facts, such as the existence and location of pain and the actual ability or inability of a claimant to perform certain, physical function or to pursue his regular employment. We*conclude that lay evidence must be weighed with consideration for the medical fact to be established, of the conclusiveness and validity of the medical evidence and the materiality, relevance and reliability of the particular lay evidence, according to its focus, foundation and its source.
It is.clear.that both lay and medical evidence must be -considered by the WCJ, and no rule exists that one is to be given more weight than the other.
Here, lay testimony regarding Marshall’s injury came from him and the three men on 'Marshall’s crew- that day. Marshall testified that his duties as a supervisor included supervising the crew, digging up water mains, |8making water taps, and working on fireplugs. He- stated that on November 1,' 2012, while attempting to repair a water leak, he placed a probing rod into the ground in order to find the water line. When he attempted to pull the 'rod out of the ground, he felt a sharp pain in his back. Marshall described the pain in connection with the November accident as being different and sharper than past experiences,with back pain. He testified that he did intend to retire through DROP but did not make it to his retirement date because of back pain.
Marshall’s crew members also testified regarding his work-related injury and the extreme pain Marshall suffered after pulling the probing rod out of the ground. Robert Lee Scott, who was on Marshall’s crew the day of the accident,- recalled seeing Marshall pull the rod out of the ground and immediately grab his back and hold it. Justin Martinez, another crew member *803 present on the day of the accident, stated he too saw Marshall holding his back. Martinez also reported that Marshall always participated in performing the work duties, but after the accident he could not work, he just supervised, and he could not really do anything. James Travis Welch, the third crew member, stated that as Marshall pulled the rod up, his back gave out, and he was unable.to work for the rest of day. Stinson, Marshall’s supervisor, testified that he knew of the accident only days after it happened.
The medical evidence in this case does not discredit or cast serious doubt on Marshall’s version of the events. The medical professionals who treated Marshall had differing opinions about the aggravation of Marshall’s |incondition post-accident. Dr.’ Martinez, the second opinion doctor chosen by Risk Management, found that nothing more could be done for Marshall, but did admit to some aggravation based on the MRI comparison. Dr. Ponarski admitted that it is possible this could be the same pain Marshall has had all along. Dr. McHugh and Dr. Gordon, both noted the differences in the pre and post-accident MRIs and that the L5-S1 protrusion was more significant after the accident.
The testimony of Marshall, his crew, and his supervisor supports Marshall’s, claim. Further, the objective medical findings indicate a reasonable possibility of a.causal connection between Marshall pulling the rod out of the ground and the aggravation of his condition. Before the accident, Marshall was able to perform the heavy labor parts of his job regardless of his then-existing back problems. After the accident, Marshall’s back pain prevented him from fully performing all work duties as he had before.
The WCJ determined that there, was sufficient evidence to show a precipitous event directly producing sudden objective findings. It is clear that there is no ironclad rule preventing the judge from making independent credibility evaluations and reaching factual conclusions based upon all evidence in the record, lay and medical. Both the legislature and courts have rejected any rule that lay testimony should only be considered if there is a conflict of medical opinions. However, here there is a difference of opinions among the medical professionals who treated Marshall; therefore, it was not plainly wrong for the WCJ to consider all the evidence when | i-imaking its decision. Upon review of the record in its entirety, it is not unreasonable to find it probable that Marshall’s back pain was-worsened by injuries suffered after a work-related accident. We find no manifest error under these circumstances; thus this assignment of error is without merit.

Retirement

, Winnsboro also argues the WCJ. erred in finding Marshall is entitled to benefits, because he was provided with suitable work until his prescheduled retirement through DROP. Winnsboro repeatedly claims that Marshall’s completion of the DROP form, scheduling his retirement three years in advance, proves his intention to retire completely, thus terminating Winnsboro’s obligation to pay benefits beyond the prescheduled DROP retirement date. The question of fact which the WCJ was to decide concerned Marshall’s intent in retiring: ie., if he intended to retire from the water department or the workforce altogether.
Louisiana R.S. 23:1221(3)(d)(iii) provides in pertinent part:
The right to supplemental earnings benefits pursuant to this paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate ... when the employee retires; —
*804 An employee’s decision to accept early retirement does not necessarily equate to retirement as contemplated by the workers’ compensation statute governing entitlement to SEB. Lewis v. Temple Inland, 2011-0729 (La.App. 1st Cir.11/09/11), 80 So.3d 52. The retirement referred to by La. R.S. 23:1221(3)(d)(iii) is not- the failure to work because of disability. Instead, it refers to the worker who has no intention of returning to work regardless of disability. Peters v. General Motors Corp., 39,279 (La.App.2d Cir.01/26/05), 892 So.2d 717, 723. The fact that an employee may receive some form of pension or retirement benefits in connection with his retirement from a job because of disability does not constitute retirement under La. R.S. 23:1221(3)(d)(iii). Id. Where a worker has retired from a heavy work duty job but is still willing to take on light duty employment within the scope of the limitations imposed by his disabilities, then that worker is said not to have withdrawn from the workforce and is not considered to have retired under the statute. Id.
Marshall’s DROP application was processed in May 2010. However, although Marshall intended to retire from the water department, he claims he was not planning on withdrawing from the workforce altogether. Arguably, this is supported by Marshall’s relatively young age. His expected date of retirement was for May 2013, but he actually stopped working in mid-April that year, allegedly due to back pain, and used his vacation and sick time. Stinson was aware of Marshall’s back problems, but stated those problems had never interfered with his work performance before November 2012. He recalled receiving notice of Marshall’s November accident a couple of days after it occurred, and noted that Marshall could no longer perform the heavy labor part of his job. Stinson also testified that he knew of Marshall’s plan to work for another company after retiring from the water department.
The completion of the DROP form only objectively' evidences Marshall’s intent to retire from the water department. Here, the record provides reasonable evidence that Marshall did not intend to completely 11Rretire from the workforce altogether. The findings of the WCJ are reasonable, and we find no manifest error under these circumstances.

Penalties and Attorney Fees

Winnsboro urges the WCJ erred in assessing penalties and attorney fees without any reasonable basis. It contends that when there is a serious defense presented in good faith, the statutory penalty and attorney fees are inappropriate. It further asserts that Marshall’s claim was reasonably controverted because he retired through DROP, and Dr. Ponarski’s letter did not specify that Marshall’s injury was work related; therefore, Marshall failed to meet the burden of proof for causation.
Failure to provide payment of benefits will result in a penalty and attorney fees “unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” La. R.S. 23:1201 F(2); McCarroll v. Airport Shuttle Inc., 2000-1123 (La.11/28/00) 773 So.2d 694; J.P. Morgan Chase v. Louis, 44,309 (La.App.2d Cir.05/13/09), 12 So.3d 440. The phrase “reasonably controvert” means that the defendant must have “some valid reason or evidence on which to base his denial of benefits.” Brown v. Tex-LA Cartage, Inc., 1998-1063 (La.12/01/98), 721 So.2d 885. Awards of penalties and attorney fees in compensation cases are essentially penal, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. Trahan v. *805 Coca Cola Bottling Co., 2004-0100 (La.03/02/05), 894 So.2d 1096. Although the benefits in the Workers’ Compensation Act are to be liberally construed, penal statutes are | ustrictly construed. Id. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant’s entitlement to benefits; the mere fact that an employer loses a disputed claim is not determinative. J.P. Morgan Chase, supra.
In penalizing Winnsboro, the WCJ stated that a simple investigation into the occurrence of events on the date of the accident would have shown that an unforeseeable, actual, and identifiable event took place that visibly aggravated Marshall’s pre-existing condition. The WCJ found that Risk Management was reasonable in questioning Marshall’s claim after Stinson reported that Marshall retired through DROP. However, it found Risk Management was unreasonable in contesting the claim after receiving Dr. Po-narski’s letter disabling Marshall from work. Although Risk Management’s follow-up question to Dr. Ponarski about Marshall’s retirement went unanswered, the WCJ found the medical report cannot be ignored simply because an adjuster needs further explanation.
We agree with the WCJ: an employer cannot ignore a medical finding by a treating physician and controvert benefits predicated on the fact that they question the doctor’s finding and need more information. The penalty and attorney fees were proper in that Winnsboro denied the accident arose out of and in the course of his employment, even though there were three eyewitnesses to corroborate Marshall’s claim. Further, Winnsboro failed to conduct a reasonable investigation into the claim before denying it and failed to disprove the accident happened at trial. The award of a penalty and | ^attorney fees was not unreasonable under these facts. This assignment of error has no merit.
CONCLUSION
Considering the foregoing reasons, the judgment of the Office of Workers’ Compensation in favor of claimant, Jay Marshall, is affirmed. Costs of this appeal in the amount of $1,097.40 are assessed to appellant, the Town of Winnsboro, in accordance with La. R.S. 13:5112(A).
AFFIRMED.